UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW HEDDEN, et al.,

                Plaintiffs,

v.

CITY OF SEATTLE, et al.,

                Defendants.

No. C05-999Z

ORDER

      This matter comes before the Court on Defendants Washington State Troopers' (the "State") motion to remove one of Plaintiffs' two attorneys, Paul Richmond ("Richmond"), on the grounds that he is a material and necessary witness, docket no. 123, and Plaintiffs' motion for a protective order and motion to quash subpoenas of Plaintiffs' attorneys, docket nos. 144, 151. Plaintiffs also request sanctions pursuant to FED. R. CIV. P. 11. Having reviewed the parties' briefs and all supporting declarations, the Court enters the following Order.

## **BACKGROUND**

      Plaintiffs' claims in this case arise out of a demonstration that occurred in downtown Seattle, Washington on June 2, 2003. Compl., docket no. 1, ¶ 1.1. Plaintiffs allege that "without provocation or legitimate law enforcement purpose, and without reasonable or

ORDER 1–

adequate warning, the Seattle Police Department and its agents used excessive force against the Plaintiffs and made an unreasonable seizure of the Plaintiffs by violating their rights under the Fourth, and Fourteenth Amendments." Id.

Among the documents and items Plaintiffs served in their Rule 26(a) initial disclosures, Plaintiffs included a DVD containing video footage of the June 2 demonstration that was taken by Richmond. Exhibits to Pls.' Mot., docket no. 141-7, Ex. 6 (Pls.' Initial Disclosures); Puz Decl., docket no. 124, Ex. 2 (DVD created by Richmond). A review of the DVD reveals Richmond undertaking the following activities: (1) questioning several demonstrators regarding police behavior; (2) handing out fliers with his contact information to demonstrators; (3) communicating with police officers who may be Defendants; (4) commenting on camera about the events of the demonstration; (5) writing down and/or recording badge numbers of officers and listing the weapons the officers were carrying; (6) collecting and/or examining physical evidence left behind after the police used less-lethal weapons (e.g., chemical canisters, etc.); and (7) recording video of confrontations between protestors and police officers, the police officers' use of weapons, police arrests, and (it appears) demonstrators throwing objects at the police. Id.

In his declaration, Richmond states that there were many people who witnessed the same events he recorded on his DVD, and several of those people either recorded video or took photographs, including local television stations. Docket no. 142, ¶¶ 7-10. Richmond also states that there were groups of "legal observers" who witnessed the demonstration on behalf of the National Lawyers Guild and American Civil Liberties Union. Id. ¶ 11. Richmond states that he had been contacted by the demonstration organizers to assist them in his capacity as an attorney and worked with them in the weeks before the demonstration. Id. ¶¶ 14-15. Plaintiffs also submit the declarations of Mike Andrew, Roger Weaver, and John Persak, who each state that (1) they were organizers of the demonstration, (2) they asked Richmond to assist them in the weeks before the demonstration in his capacity as an

ORDER 2–

attorney, and (3) they asked Richmond to attend the demonstration in his capacity as an attorney, which he did. Docket nos. 164, 170, 171. Finally, Richmond states that he did not participate in any way in the demonstration but was only present as an attorney and, after the demonstration, represented some of the Plaintiffs who were charged in subsequent criminal cases. Id. ¶¶ 19-22.

Plaintiffs' attorney Lawrence Hildes ("Hildes") states that he was present at the demonstration as a "legal observer" at the request of the National Lawyers Guild, of which he is a member. Hildes Decl., docket no. 145, ¶ 10. Hildes states that he did not participate in any way in the demonstration. Id. ¶¶ 12-13. Finally, Hildes states that he "was never alone at the scene, and everything [he] witnessed was also observed by Plaintiffs and other eye witnesses. Id. ¶ 21.

After receiving Plaintiffs' initial disclosures on January 20, 2006, Defendants served Plaintiffs with initial disclosures on January 23, 2006. Puz Decl., Ex. 1. Having viewed the Richmond DVD, Defendants listed Richmond as a "Potential Witness" under Rule 26(a)(1)(A). Id. at 1. On February 14, 2006, the State moved to remove Richmond as a lawyer for Plaintiffs based on Rule of Professional Conduct ("RPC") 3.7, which generally prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness. Defs.' Mot., docket no. 123. Plaintiffs oppose Defendants' motion to remove Richmond on the following grounds: (1) Richmond is not likely to be a "necessary" witness because his evidence is duplicative and Defendants have failed to demonstrate that Richmond is a necessary witness; (2) removing Richmond would create a substantial hardship for Plaintiffs; and (3) even if Richmond is "necessary," he may still represent Plaintiffs in pre-trial matters.[1] Pls.' Opp., docket no. 14. In addition, Plaintiffs request

---

[1] Plaintiffs also suggest that the motion should be denied because it is improperly noted, though they offer no authority or argument to support this contention. Pl.'s Opp., at 15. In any event, the motion was properly noted for the third Friday after filing pursuant to LR 7(d)(3).

ORDER 3–

sanctions under Rule 11, arguing that Defendants' motion was brought to "harass or to cause unnecessary delay," or to needlessly increase the cost of litigation. Id.

Plaintiffs also have two separate motions pending before the Court. First, Plaintiffs move for a protective order preventing Defendants from taking any discovery from Richmond or Hildes. Docket no. 144. Second, Plaintiffs move to quash subpoenas duces tecum issued to Richmond and Hildes on March 14, 2006. Docket no. 151; Pls.' Exs., docket no. 153, at 1-4. The Richmond subpoena requested[2]:

> [T]he following papers, notes, video and/or audio recordings, documents, books, tangible things for purposes of copying and/or inspection, relating to your involvement in the June 2, 2003 LEIU protest incident . . . [including], but [] not limited to the following:
>
> 1. Any notes from the day of the event, whether taken by you, Larry Hildes or any other person;
> 2. Any and all media, including, but not limited to, video recordings from the day of the event, whether taken by you, Larry Hildes or any other person;
> 3. Any documents pertaining to the permitting process; and
> 4. Any written and/or recorded communications created prior to June 3, 2003, which pertain in any way to the protest incident, whether between you and Larry Hildes or any other party.

Id. at Ex. 1. The subpoena also stated that, in lieu of appearing personally for a deposition, the documents could simply be mailed to defense counsel. Id. The subpoenas were noted for Monday, March 21, 2006, at 9:00 a.m., which is notable for two reasons: (1) as Plaintiffs point out, March 21, 2006, is a Tuesday, not a Monday, and (2) that date has now passed without a response from Richmond or Hildes because of the pending motion for a protective order and motion to quash, making the subpoenas themselves moot.

Plaintiffs also make a separate request for Rule 11 sanctions in their motion for a protective order and motion to quash the subpoenas, arguing that Defendants issued the subpoenas solely for purposes of harassing Plaintiffs and their counsel.

---

[2] The Hildes subpoena is substantively identical. See id., Ex. 3.

ORDER 4–

# Discussion

## I. State's Motion to Remove Paul Richmond

In its opening brief, the State relies only on RPC 3.7 as authority for removing Richmond as Plaintiffs' attorney. RPC 3.7 states as follows:

> A lawyer shall not act as advocate *at a trial* in which the lawyer or another lawyer in the same law firm is *likely to be a necessary witness* except where:
>
> (a) The testimony relates to an issue that is either uncontested or a formality;
>
> (b) The testimony relates to the nature and value of legal services rendered in the case; or
>
> (c) The lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate; or
>
> (d) The trial judge finds that disqualification of the lawyer would work a substantial hardship on the client and that the likelihood of the lawyer being a necessary witness was not reasonably foreseeable before trial.

(Emphasis added). Under the State of Washington RPC's, a court should not disqualify an attorney pursuant to Rule 3.7 absent "compelling circumstances." State v. Schmitt, 124 Wn. App. 662, 666 (2004) (citing P.U.D. No. 1 of Klickitat County v. Int'l Ins. Co., 124 Wn.2d 789, 812 (1994)). "To demonstrate compelling circumstances, a party must show that the attorney will provide material evidence unobtainable elsewhere." Id. at 666-67.

In P.U.D. No. 1, the Washington State Supreme Court took review of a trial court's ruling that an attorney who had participated in a settlement agreement was not excluded under RPC 3.7 from participating in a case involving a challenge to that settlement. 124 Wn.2d at 812. The trial court first denied an early motion by the defendants to disqualify the attorney, Malanca, reasoning that testimony concerning the settlement was likely to be available from other attorneys who had participated. Id. Later, when other testimony was not forthcoming, the trial court denied a second motion by the defendants to disqualify Malanca from participating in the pending trial, though the court ruled that the defendants could call Malanca as a witness at trial. Id. In P.U.D. No. 1, the Washington State Supreme

ORDER  5–

Court stated that disqualification under Rule 3.7 requires a showing by the moving party that: (1) the evidence is material; (2) the evidence is unobtainable elsewhere; and (3) the testimony is or may be prejudicial to the testifying attorney's client. Id. (citing cases from foreign jurisdictions).

In Schmitt, the trial court disqualified a prosecuting attorney from a criminal case where the complaining citizen had called the prosecutor directly to allege that the defendant threatened her life. 124 Wn. App. at 665. The trial court ruled that the testimony the defendant sought to elicit from the attorney was material, unobtainable elsewhere, and put the State in the position of acting as a witness trying to persuade the jury as to particular factual events and as an advocate for those events. Id. at 667. The Washington State Court of Appeals affirmed, agreeing with the trial court that "[t]his is exactly the circumstance that rule 3.7 is designed to avoid." Id.

In the Ninth Circuit, courts have stated that "a defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness." United States v. Prantil, 764 F.2d 548, 551 (9th Cir. 1985) (citing United States v. West, 680 F.2d 652, 654 (9th Cir. 1982)). In Prantil, the Court held that the district court abused its discretion in denying the defendant's motion to disqualify a prosecuting attorney who was in sole possession (other than the defendant himself) of information related to perjury charges. Id. at 554. The Prantil Court stated that courts must consider both "the quality and quantity of the alternate sources of evidence" in determining whether an attorney should be disqualified. Id. at 552.

Here, the State asserts that it intends to depose Richmond concerning the DVD footage and his perception of the events on the day of the demonstration. Puz Decl., ¶ 5. The State also submits that Richmond is, at this point, a witness it may potentially call at trial. Id. Based on his recording of the DVD and actions at the demonstration, the State contends that Richmond is a material witness in this case and may be required to testify

ORDER 6–

1  contrary to the interests of his clients. Finally, the State argues (without elaboration) that
2  none of the exceptions listed in RPC 3.7(a)-(d) are applicable to Richmond.

3  In response, Plaintiffs have filed a brief with lengthy citations to Schmitt, P.U.D. No.
4  1, Prantil, cases from foreign jurisdictions, notes from the ABA Model Rules of Professional
5  Conduct, and treatises on civil procedure. Plaintiffs implicitly concede that Richmond's
6  potential testimony is "material" to this case. However, Plaintiffs contend that the State has
7  failed to meet its burden of establishing that the evidence it seeks from Richmond is
8  unobtainable elsewhere and necessarily prejudicial to Richmond's clients. Plaintiffs'
9  argument has merit. At this early stage of the litigation, where discovery has yet to fully
10 commence, the State has not established that Richmond will provide testimony that is
11 unobtainable from other parties or witnesses. Additionally, the State has not established, as
12 is their burden under P.U.D. No. 1, that Richmond's testimony will be in any way prejudicial
13 to Plaintiffs. Finally, the plain language of RPC 3.7 states that a lawyer "shall not act as an
14 advocate *at trial*" where the lawyer is likely to be a necessary witness. (Emphasis added).
15 The trial date in this case is set for April 2, 2007. At this early stage in the litigation,
16 disqualification of Richmond is not warranted. However, as discovery is completed it may
17 become apparent that, as in P.U.D. No. 1, Richmond has some testimony to offer that is
18 unobtainable from any other party or witness. Accordingly, Defendants' Motion to remove
19 Richmond is DENIED WITHOUT PREJUDICE.

20 **II.    Plaintiffs' Motion for a Protective Order**

21 Plaintiffs move for a protective order barring the Defendants from taking any
22 discovery from Richmond or Hildes pursuant to Rule 26(c). Plaintiffs offer several
23 arguments in support of their motion for a protective order. First, Plaintiffs contend that the
24 discovery sought from Richmond and Hildes is not barred because it is protected by
25 attorney/client privilege and as work product. Second, Plaintiffs maintain that the
26 information sought from Richmond and Hildes will be cumulative and duplicative of

ORDER   7–

discovery taken from several other witnesses who attended the demonstration. Third, Plaintiffs argue that the discovery sought by Defendants will create a substantial hardship for Plaintiffs because it will interfere with Richmond and Hildes' ability to proceed with this case. Finally, Plaintiffs vaguely assert that they and their attorneys are subject to "heightened protections" because this case involves civil rights and First Amendment claims.

Generally, discovery is broad and parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things." Rule 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, discovery may be limited where courts determine that "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(i). Additionally, Rule 26(c) states in relevant part as follows:

> Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

The case law regarding the taking of depositions for opposing counsel is mixed and, at times, contradictory. See Am. Cas. Co. v. Krieger, 160 F.R.D. 582 (S.D. Cal. 1995) (distinguishing between Johnston Devel. Group v. Carpenters Local Un. No. 1578, 130 F.R.D. 348 (D.N.J. 1990), and Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1987)); WILLIAM SCHWARZER, A. WALLACE TASHIMA & JAMES WAGSTAFF, FEDERAL CIVIL PROCEDURE BEFORE TRIAL §§ 11:1142-49 (2005). For cases in which a party seeks to depose opposing litigation counsel and the questioning would expose litigation strategy rather than merely revealing disputed facts, courts have applied the Eighth Circuit's Shelton test. In such circumstances, Shelton takes the unusual step of placing the burden on the party

ORDER 8–

*opposing* the motion for a protective order to show: (1) the information sought is relevant and non-privileged; (2) the information is crucial to the preparation of the case; and (3) no means exist to obtain the information other than to depose counsel. 805 F.2d at 1327. In Shelton, the plaintiff sought to depose Burns, A.M.C.'s supervising in-house counsel. Id. at 1325. Burns refused to answer questions concerning her compilation of litigation related documents on the grounds of attorney/client privilege and work product protection. Id. The Eighth Circuit held that the information sought was privileged and, under the three-part test it articulated, that similar information was available from other sources. Id. at 1327-29.

In contrast, where a party seeks to depose opposing counsel as an "actor" or "viewer" with non-privileged information, courts have applied the rule discussed in Johnston. In Johnston, the defendants sought to depose opposing counsel as to non-privileged meetings held before the litigation that allegedly revealed highly relevant and disputed facts concerning a labor dispute. 130 at 353-56. The Johnston Court held that the deposition of an attorney may be "both necessary and appropriate where the attorney may be a fact witness, such as an 'actor or viewer' . . . rather than one whose role in a transaction was speculative and not central to the dispute. Id. at 352. In such cases, the burden of preventing the discovery by means of a protective order remains on the party seeking the order. Id. at 352-53.

In American Casualty, a United States Magistrate Judge for the Southern District of California conducted a comparison of Shelton and Johnston after concluding that no court within the Ninth Circuit had addressed the question of when, and under what circumstances, a party may take the deposition of opposing counsel. 160 F.R.D. at 585-89. The insurance company defendant in American Casualty sought to depose two attorneys who had obtained a default judgment and assignment of rights against the insured regarding the circumstances of those actions. Id. at 584-85. Reviewing the case law, the American Casualty Court concluded that "[m]ost courts which have addressed these issues have held that the taking of

ORDER  9–

1  opposing counsel's deposition should be permitted only in limited circumstances and that,
2  because of the potential for abuse inherent in deposing an opponent's attorney, the party
3  seeking the deposition must demonstrate its propriety and need before a deposition may go
4  forward." Id. 588.  The Court found the facts more like Johnston than Shelton but applied
5  the Shelton three-part test because of the danger that attorney/client privilege or work
6  product might be implicated as a result of the attorneys' prior representation of parties who
7  were injured by the insured. Id. at 589.  Even applying the more stringent standard from
8  Shelton, the American Casualty Court concluded that the deposition of the attorneys could
9  go forward subject to the limitation that the scope was limited to the entry of default and
10 assignment of rights. Id. at 591.

11        This case is clearly analogous to the factual scenario described in Johnston.
12 Defendants seek discovery from Richmond and Hildes concerning their observations of the
13 events that occurred at the demonstration, which form the entire basis for Plaintiffs' claims.
14 See State Defs.' Opp. Br., docket no. 155, at 4.  Also, as described below, most of the
15 information they seek is not protected by attorney/client privilege or the work product
16 doctrine, which weighs in favor of placing the burden of establishing good cause on
17 Plaintiffs under Rule 26(c) and Johnston.  Thus, Plaintiffs must demonstrate that the
18 discovery sought by Defendants is either protected or should be denied for the reasons set
19 forth in Rule 26(b)(2)(i).

20                    **A.    Attorney/Client Privilege and Work Product**

21        The threshold question is whether the information Defendants seek is unobtainable
22 because it is privileged or work product.  Under Federal Rule of Evidence 501, evidentiary
23 privileges are determined in accordance with State law.  RCW 5.60.060(2) states: "An
24 attorney or counselor shall not, without the consent of his or her client, be examined as to
25 any communications made by the client to him or her, or his or her advice given thereon in
26 the course of professional employment."  The privilege extends to documents that contain a

ORDER   10–

privileged communication. Dietz v. Doe, 131 Wn.2d 835, 842 (1997). "An attorney-client relationship is deemed to exist if the conduct between an individual and an attorney is such that the individual subjectively believes such a relationship exists." In the Matter of the Disciplinary Proceeding Against McGlothlen, 99 Wn.2d 515, 522 (1983). "However, the belief of the client will control only if it is reasonably formed based on the attending circumstances, including the attorney's words or actions." Dietz, 131 Wn.2d at 843 (citation omitted). The burden of proving that a privilege exists rest squarely on the party asserting it. Id. The privilege may be waived when (1) the attorney is authorized to speak and act for the client on particular matters and the disclosures by the attorney are within the scope of that authority or (2) when the communication is made in the presence of third persons. Id. at 850.

Richmond and Hildes both contend that they had an attorney/client relationship with every Plaintiff because both attended the protest as attorneys. First, Plaintiffs submit the declarations of Mike Andrew, Roger Weaver, and John Persak, who each state that (1) they were organizers of the demonstration, (2) they asked Richmond to assist them in the weeks before the demonstration in his capacity as an attorney, and (3) they asked Richmond to attend the demonstration in his capacity as an attorney and he did so. Docket nos. 164, 170, 171. Based on these declarations, Plaintiffs then make the rather incredible assertion that Richmond formed an attorney/client relationship with all of the Plaintiffs under Upjohn Co. v. United States, 449 U.S. 383, 394 (1981), which held that attorneys who communicate with any corporate employee for purposes of securing legal advice for the corporation have an attorney/client relationship with the employee and the communications are privileged. Plaintiffs apparently analogize corporate employees to the Plaintiffs who happened to attend the demonstration organized by Andrew, Weaver, and Persak. Plaintiffs cite no cases that expand the Upjohn rule anywhere near the scope to which Plaintiffs would have this Court interpret it. Indeed, there is no basis to conclude that Richmond had contact with all of the

ORDER 11–

1  Plaintiffs such that Plaintiffs subjectively considered Richmond their attorney "based on the
2  attending circumstances." <u>Dietz</u>, 131 Wn.2d at 843.  Moreover, the attorney/client privilege
3  only extends to "any *communications* made by the client to him or her, or his or her *advice*
4  given thereon in the course of professional employment."  RCW 5.60.060(2) (emphasis
5  added).  Mere observations of events do not constitute "communications" or "advice" and,
6  therefore, are not privileged.  Finally, to the extent Richmond can be seen and heard on the
7  DVD communicating with persons that may have been organizers of the demonstration (who
8  now assert the privilege), those communications have been waived under <u>Dietz</u> because they
9  were disclosed to Defendants.

10  Plaintiffs also claim that discovery may not be taken from Richmond because his
11  observations and DVD are work product created on behalf of those Plaintiffs that he did
12  represent during the demonstration.  The "work product" doctrine protects materials that
13  reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses,
14  and inferences drawn from interviews.  <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947).  The
15  doctrine is designed to preserve the privacy of attorneys' thought processes.  <u>Id.</u>  The work
16  product protection may be waived by disclosure or conduct, such as making testimonial use
17  of the materials.  <u>United States v. Nobles</u>, 422 U.S. 225, 239 n.14 (1975).  Defendants do not
18  disagree that the DVD could be considered "work product" but argue that Plaintiffs'
19  argument fails because the work product protection was waived when Plaintiffs served
20  Defendants with the DVD in the initial disclosures.  Under <u>Nobles</u>, Defendants are correct.
21  In serving the DVD on Defendants and relying on its contents for allegations in the
22  Complaint, Plaintiffs have waived any claim that the contents of the DVD are protected by
23  the work product doctrine.

24  In contrast to Richmond, Plaintiffs have not submitted any declarations stating that
25  they had contact with Hildes before the demonstration or that they asked him to attend as
26  their attorney.  Hildes states that he attended the demonstration as a "legal observer" at the

ORDER  12–

request of the National Lawyers Guild, of which he is a member.  Hildes Decl., docket no. 145, ¶¶ 10.  None of the Plaintiffs who organized the demonstration state that they had an attorney/client relationship with the National Lawyers Guild, any of its attorneys, or Hildes specifically.  Plaintiffs bear the burden of establishing that the lawyer/client relationship exists.  Dietz, 131 Wn.2d 843.  Based on the record before the Court, there is no basis to conclude that Hildes had an attorney/client relationship with any of the Plaintiffs while he observed the demonstration.  Because Hildes had no attorney client relationship with Plaintiffs and only became their lawyer *after* the demonstration, his communications with the Plaintiffs during the demonstration are not privileged and his written observations of the events that occurred at the demonstration are not protected as work product.

**B.     Duplicative and/or Substantial Hardship**

Plaintiffs contend that there is good cause to grant the motion for a protective order because the information sought by Defendants is duplicative of information available from other witnesses and would create a substantial hardship by interfering with counsels' preparation of this case.  Noting that Plaintiffs were all allegedly present at the time of the incident, Plaintiffs argue that Defendants have not taken depositions from anyone to determine if Richmond and Hildes have any information that would not be cumulative of other testimony.  Plaintiffs provide the declarations of several persons who were at the demonstration and the names of persons who recorded video or took pictures of the demonstration.  See e.g., Hedden Decl., docket no. 174; Eyring Decl., docket no. 172; Kuller Decl., docket no. 168; Richmond Decl., docket no. 146, ¶¶ 8-10.  Plaintiffs also contend that it would be overly burdensome for Richmond and Hildes to take the time to prepare for and give deposition testimony in light of the heavy workload associated with this case and the availability of other witnesses.

In opposition to the motion, Defendants argue that the Plaintiffs have not established that all of the information observed and recorded by Richmond and Hildes is duplicative of

ORDER 13–

other available sources. While Plaintiffs have identified other witnesses and parties who were present and recorded video of the demonstration, Defendants are correct that they cannot know whether the testimony of those witnesses and parties will be the same as Richmond and Hildes unless and until they take discovery from Richmond and Hildes. As for Plaintiffs' "substantial hardship" argument, Defendants do not respond to the contention that it would be burdensome for Richmond and Hildes to submit to depositions regarding their observations of the demonstration. Thus, this argument is presumed to have some merit. However, the potential hardship may be alleviated by placing limits on the discovery that may be taken from Richmond and Hildes and does not necessarily require a blanket prohibition on all discovery.

### C. Heightened Protection

Raising the issue for the first time in their reply brief, Plaintiffs contend that the motion for a protective order should be granted on the grounds that there are "heightened protections" for plaintiffs and attorneys in First Amendment and civil rights litigation. This argument is without merit. Plaintiffs cite NAACP v. Button, 371 U.S. 415 (1963), and In re Primus, 436 U.S. 412 (1978), where the Supreme Court addressed cases involving the solicitation of clients for civil rights cases and noted that such litigation is a means to achieve equality of treatment by all government and a form of political expression. Button and Primus are inapposite. Those cases have nothing to do with motions for protective orders, the standards for deposing opposing counsel, or the attorney/client privilege and work product doctrines. The Court will give no weight to this argument.

### D. Protective Order Conclusion

Under all the circumstances in this case, it does not appear that Plaintiffs have shown "good cause" as required by Rule 26(c) for a blanket protective order against obtaining any discovery from Richmond and Hildes. Plaintiffs made Richmond's participation an issue in this case by including his DVD in their initial disclosures and relying on its contents in this

ORDER 14–

case. It is non-privileged evidence that is directly relevant to the factual dispute underlying Plaintiffs' many claims. Hildes, on the other hand, was not an attorney for any Plaintiff when he witnessed the demonstration. Everything he witnessed and recorded is subject to discovery. While similar evidence is apparently available from other sources, Defendants are entitled to some discovery regarding Richmond's and Hildes' observations of the demonstration. Obtaining discovery from Richmond and Hildes may also reveal that one or both are subject to the disqualification from trial under the three-part test established in P.U.D. No. 1. Thus, the Court GRANTS IN PART Plaintiffs motion for a protective order and will allow Defendants to take discovery from Richmond and Hildes subject to the following limitations.

First, Defendants may take discovery as to Hildes as to any actions, observations, notes, or other discoverable issues that occurred before he was retained as counsel for Plaintiffs. To avoid undue hardship, the Court limits any deposition of Hildes to a total of seven hours during one day.

Second, the scope of the discovery Defendants may take from Richmond must be limited to non-privileged, non-work product conversations and materials. While the Court cannot provide a definitive ruling in this Order as to every question Defendants may ask of Richmond, the list of example questions provided by the State allows the Court to offer some initial guidance. See State Defendants' Opp. Br., docket no. 155, at 4. The Court concludes that Defendants may ask questions regarding (1) which conversations/scenes were edited from the DVD provided to Defendants; (2) whether and to whom the video was shown before the attorney client privilege was formed with any given Plaintiff; (3) what Richmond observed at the scene that may or may not have been captured on the video; (4) what impressions Richmond gained from their presence at the demonstration and the basis for those impressions; (5) subjective beliefs/prejudices, which are unrelated to litigation strategy, that may have influenced what Richmond recorded, wrote and observed; (6) the nature,

ORDER 15–

location and chain of custody of other, non-work product evidence that may have been gathered by Richmond at the scene of the demonstration. However, Defendants may not inquire as to Richmond's privileged communications with Andrew, Weaver and Persak that occurred before, during, or after the demonstration, as Plaintiffs have established that Richmond formed an attorney/client relationship with those individuals. Additionally, Defendants may not question Richmond regarding matters of litigation strategy, including instances where that strategy influenced his choice of what he did or did not record on video. Finally, while Defendants may seek discovery regarding written notes that reflect Richmond's *observations* of the demonstration events, they may not obtain written notes describing Richmond's litigation strategy or opinions regarding his clients' potential legal claims. Finally, as with Hildes, the Court limits any deposition of Richmond to a total of seven hours during one day.

### III. Plaintiffs' Motion to Quash Subpoenas

Plaintiffs contend that the subpoenas issued to Richmond and Hildes should be quashed for the following reasons: (1) failure to comply with Rule 45(a)(1)(d); (2) the incorrect date of Monday, March 21, 2006; (3) failure to allow reasonable time for compliance under Rule 45(c)(3)(A)(i); and (4) they improperly require disclosure of privileged or work product material under Rule 45(c)(3)(A)(iii).

The first three arguments raised by Plaintiffs are rendered moot by the fact that the date for the subpoenas has long since passed and new subpoenas will have to be issued. First, Plaintiffs are correct that the subpoenas failed to include the text of Rule 45(c) and (d), as required under Rule 45(a)(1)(D). Defendants concede this point. Defs.' Opp., docket no. 157, at 13. Defendants can correct this error if the subpoenas are re-issued. Second, the prior incorrect noting date of "Monday, March 21, 2006," is no longer at issue because March 21 has passed. Third, Plaintiffs' contention that the subpoenas should be quashed for failure to "allow reasonable time for compliance" under Rule 45(c)(3)(A)(i) is moot because

ORDER  16–

the noting date has passed and Plaintiffs will have had over a month's notice of Defendants' intent as to any similar, newly-issued subpoenas. In sum, all of Plaintiffs' technical challenges to the subpoenas are moot and can be easily cured in new subpoenas.

Plaintiffs' fourth argument (that the subpoenas improperly request privileged or work product protected information) is largely addressed in section II.A above. Based on the record before the Court, at the time of the demonstration Richmond had an attorney/client relationship only with the three organizers of the demonstration, Mike Andrew, Roger Weaver, and John Persak. Hildes had no attorney/client relationship with any of the Plaintiffs at that time. Therefore, the only contested issue is the extent to which Defendants may take discovery from Richmond regarding his communications with Plaintiffs before and during the protest and any notes or media he has not turned over to Defendants. Accordingly, the Court STRIKES Plaintiffs' motion to quash as MOOT and orders that any future subpoena of Richmond is limited to materials or information not prohibited by the protective order.

### IV.     Plaintiffs' Request for Rule 11 Sanctions

In their opposition to Defendants' motion, motion for a protective order, and motion to quash, Plaintiffs request Rule 11 sanctions on the grounds that Defendants' motion to remove Richmond and the attempts to subpoena Richmond and Hildes are frivolous and brought only to harass Plaintiffs and their counsel. See Rule 11(b)(1). This request is without merit. For the reasons discussed above, Defendants are not categorically barred from taking discovery from Richmond, who was at the demonstration and served a copy of his DVD on Defendants, or Hildes, who was at the demonstration and did not have an attorney/client relationship with any Plaintiff. Accordingly, Plaintiffs' requests for Rule 11 sanctions are DENIED.

ORDER  17–

# CONCLUSION

Defendants' motion to remove Plaintiffs' attorneys, docket no. 123, is DENIED WITHOUT PREJUDICE. The State has not met its burden of establishing the three factors for disqualification under P.U.D. No. 1. The Court GRANTS IN PART Plaintiffs' motion for a protective order, docket no. 144. Defendants may take discovery from Hildes and Richmond subject to the limitations set forth in section II.D above. The Court STRIKES AS MOOT Plaintiffs' motion to quash the subpoenas of Richmond and Hildes, docket no. 151. Any future subpoenas must comply with Rule 45 and the limitations on discovery described in this Order. Finally, Plaintiffs' requests for Rule 11 sanctions, docket nos. 140, 144, 151, are DENIED.

IT IS SO ORDERED.

DATED this 3rd day of May, 2006.

_____
Thomas S. Zilly
United States District Judge

ORDER 18–